**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1885
_____

GLORIA J. WHITING,
                                    Appellant

v.

LARRY A. BONAZZA, Individually and in his official capacity
as a Police Officer of Smith Township;
AMBER PRICE, Individually and in her official capacity
as a Police Officer of Burgettstown Borough;
SMITH TOWNSHIP, a Municipality;
CHIEF BERNIE LARUE, Individually and in his official capacity
as Chief Police Officer of Smith Township;
BURGETTSTOWN BOROUGH, a Municipality;
CHIEF GEORGE ROBERTS, Individually and in his official capacity
as Chief Police Officer of Burgettstown Borough
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:09-cv-01113)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 11, 2013
Before:  FUENTES, VANASKIE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: October 16, 2013)
_____

OPINION
_____

PER CURIAM

Gloria Whiting appeals pro se from the District Court's entry of judgment in her civil rights case. For the following reasons, we will affirm.

I.

On the night of June 16, 2008, Whiting argued with a neighborhood teenager about the local playground curfew. Whiting called 911 to report the incident, and Smith Township police officer Larry Bonazza was dispatched to the scene. As Officer Bonazza arrived, the situation was escalating. Whiting had moved from her house to an adjacent, unoccupied property where several of her neighbors had also gathered. The neighbors were voicing their opposition to the playground curfew, and Whiting was yelling at the neighbors in kind. In an attempt to quell the situation, Officer Bonazza instructed Whiting to return home. Despite his instruction, Whiting remained outside, clamoring for the crowd of neighbors to leave what she claimed was her property. Unable to diffuse the situation, Officer Bonazza radioed Burgettstown police officer Amber Price for backup and arrested Whiting for disorderly conduct. Thereafter, Officer Price arrived at the scene and placed Whiting in handcuffs. Officer Bonazza transported Whiting back to the police station. Ultimately, Whiting was found not guilty of the charge of disorderly conduct.

In 2009, Whiting filed a complaint pursuant to 42 U.S.C. § 1983 against Officers Bonazza and Price, Smith Township, Burgettstown Borough, and the local magistrate judge who conduct Whiting's video arraignment. Whiting raised, inter alia, claims of false arrest and excessive force, alleging that Officers Bonazza and Price lacked probable

cause to arrest her for disorderly conduct and that the officers injured her during the arrest.

The District Court granted the defendants' motion to dismiss Whiting's complaint but it offered Whiting leave to amend. Subsequently, the District Court dismissed on immunity grounds Whiting's claims against the magistrate judge. (See D. Ct. Doc. 49 at 21-23.) In May 2011, Whiting amended her complaint for a second time, adding the police chiefs of Smith Township and Burgettstown as defendants. The District Court dismissed the claims against the municipalities for failure to state a viable claim of municipal liability and as to the police chiefs on statute-of-limitations grounds. (See D. Ct. Doc. 102 at 5, 12-13.) Thereafter, Whiting and the two police officers filed cross motions for summary judgment. The District Court entered summary judgment in favor of Officers Bonazza and Price and denied Whiting's motion for summary judgment. Whiting timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over the District Court's entry of summary judgment in favor of Officers Bonazza and Price. See Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, no genuine issue of material fact exists. See Fed. R. Civ. P. 56(c); Saldana, 260 F.3d at 231. We review de novo the District Court's earlier orders dismissing Whiting's claims against the magistrate judge, the

3

police chiefs, and the municipalities.  See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

A.  False Arrest Claim

Whiting challenges the District Court's grant of summary judgment in favor of Officers Bonazza and Price on her false-arrest claim.  To prevail, Whiting needed to show that Officers Bonazza and Price lacked probable cause to arrest her for disorderly conduct.  See Startzell v. City of Phila., 533 F.3d 183, 203-04 (3d Cir. 2008).  Probable cause to arrest exists when the information within the officer's knowledge at the time of the arrest would be enough to allow a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested.  See United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990).  Under Pennsylvania law, a person is guilty of disorderly conduct if, inter alia, she "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . (1) engages in fighting or threatening, or in violent or tumultuous behavior; [or] (2) makes unreasonable noise." 18 Pa. Cons. Stat. Ann. § 5503.

Here, viewing the evidence in the light most favorable to Whiting, the record indicates that Officer Bonazza had reason to believe at the time that Whiting was at least recklessly creating a risk of public inconvenience by "engag[ing] in . . . tumultuous behavior" or "mak[ing] unreasonable noise."  See id.  Officer Bonazza arrived on the scene shortly before 10:00 p.m. on a Monday night as Whiting was yelling at her neighbors who, in turn, were yelling about the playground curfew.  This behavior continued even after Officer Bonazza's arrival on the scene.

4

Whiting disputes the assertion that the events took place in "public." She claims that she owns the unoccupied adjacent property on which the argument took place and, as such, could not have committed disorderly conduct. The defendants dispute her claim of ownership. In any event, the answer to whether Whiting owns the vacant lot is not dispositive. As the District Court noted, "public unruliness" is a sine qua non of disorderly conduct. The statute defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa. Cons. Stat. Ann. § 5503(c). Thus, even if some or all of the property belonged to Whiting, Officer Bonazza had reason to believe, as discussed above, that her conduct was affecting persons in a place to which the public has access, including her neighborhood and, specifically, the playground across the street from the vacant lot.[1]

And even if Whiting did have a false-arrest claim, Officer Bonazza would nevertheless be entitled to qualified immunity because a reasonable officer in his position would not have understood that the arrest was unlawful. See Pearson v. Callahan, 555

---

[1] In Groman v. Twp. of Manalapan, 47 F.3d 628, we did indeed find that under 18 Pa. Cons. Stat. Ann. § 5503, a person cannot commit the offense of disorderly conduct *inside* her home. But our decision in Groman is not controlling here. Whiting was not inside her home; she was outside. In Commw. v. Wertelet, we note, the Superior Court found no disorderly conduct where the plaintiff had been unruly on her own property, but it specifically noted that "she lives in a rural setting . . . [where] her actions could not cause public inconvenience, annoyance or alarm . . ." 696 A.2d 206, 209 n.5 (Pa. Super. 1997). Whiting's altercation, however, did not take place in a rural area. It took place in the middle of her neighborhood and directly across the street from a public playground.

U.S. 223, 232 (2009) (entitlement to qualified immunity depends on whether (1) the plaintiff demonstrated the deprivation of a constitutional right; and (2) that right was established at the time of the alleged deprivation); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987) (noting that law enforcement "officials who act in ways they reasonably believe to be lawful" should not be held personally liable because "it is inevitable that [they] will in some cases reasonably but mistakenly conclude that probable cause is present"). When Officer Bonazza arrived on the scene, he observed Whiting and the neighbors arguing in a vacant lot next to Whiting's house and directly across the street from the playground. He could not have been expected in the heat of the moment to ascertain the ownership of the vacant lot. See Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) ("While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence [required at a trial].'") (quoting Gerstein v. Pugh, 420 U.S. 103, 121 (1975)); see also Anderson, 483 U.S. at 641. Thus, as to the false-arrest claim, the District Court's grant of summary judgment in favor of Officers Bonazza and Price was not error.[2]

---

[2] Summary judgment was appropriate as to Officer Price because the uncontested evidence demonstrates that Officer Bonazza told her that Whiting had caused a public disturbance. This alone was sufficient for her to have believed probable cause existed. See Groman, 47 F.3d at 635 n.10 (citing Baker v. McCollan, 443 U.S. 137, 143-44 (1979); see also Rogers v. Powell, 120 F.3d 446, 455 (3d Cir. 1997) ("[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, [that] officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed.")

6

B.  Excessive Force Claim

Whiting also challenges the District Court's grant of summary judgment as to her excessive-force claim, alleging that Officers Bonazza and Price injured her when they placed her in handcuffs, forced her into the backseat of the police car, and drove recklessly to the police station.  However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, is constitutionally unreasonable." Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997).  The degree of force that Officers Bonazza and Price used to arrest and transport Whiting had to exceed that which was reasonable.  Groman, 47 F.3d at 633-34 (3d Cir. 1995).  It did not.

The summary judgment record indicates that Whiting's arrest was relatively routine.  Officer Price placed Whiting in handcuffs and, after a protracted period when Whiting pleaded to be seated in the front of the police car due to her anxiety and panic disorder, Officer Price pushed Whiting's head down and placed her in the backseat.  See, e.g., Croom v. Balkwill, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (no constitutional violation where officer forced unarmed, physically weak, elderly woman to the ground and held her there with a knee on her back for ten minutes because force was *de minimis*). Whiting has alleged that the handcuffs were too tight, that she suffered knee injuries from being placed in the backseat, and that she suffered a panic attack, but the record simply does not reflect that she made Officers Bonazza or Price aware that she was injured or in discomfort after being placed in the car.  See, e.g., Alexander v. Cnty. of L.A., 64 F.3d 1315, 1323 (9th Cir. 1995) (finding excessive force where plaintiff repeatedly asked officer to loosen handcuffs and officer refused); Palmer v. Sanderson, 9 F.3d 1433, 1436

7

(9th Cir. 1993) (denying qualified immunity to officer who tightly handcuffed an elderly man and refused to loosen the handcuffs). Consequently, the District Court properly granted summary judgment in favor of Officers Bonazza and Price.

C. District Court's Dismissal Orders

Finally, Whiting argues that the District Court erred in dismissing her claims against the municipalities, the police chiefs, and the magistrate judge. Whiting claimed that the magistrate judge falsified documents and denied her request for her son's assistance at a hearing. In its February 10, 2011 order, the District Court dismissed these claims, finding the magistrate judge to be absolutely immune from § 1983 liability. Of course, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978); see also Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000). And nothing in the record supports Whiting's claim that the magistrate judge falsified documents.

For substantially the reasons given by the District Court, it also properly dismissed Whiting's claims against the police chiefs, as the claims were barred by the statute of limitations. Whiting had to file her claims against them within two years from the time when she "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Del. v. Phila., 142 F.3d 582, 599 (3d Cir. 1998); see also 42 Pa. Cons. Stat. Ann. § 5524; Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). The claims against the police chiefs accrued in June 2008, when Whiting was arrested for disorderly conduct. But rather than naming the police chiefs as defendants in the original

8

complaint, she waited until filing her second amended complaint in May 2011—almost a year too late.[3]

To the extent that Whiting did not make out her claims of unlawful arrest and excessive force, her claims against the municipalities were necessarily deficient. Whiting named Smith Township and Burgettstown Borough as defendants for the acts of its officers—Officers Bonazza and Price. But municipal liability under § 1983 arises only when a constitutional deprivation results from an official custom or policy. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Here, as discussed above, Whiting suffered no constitutional injury. See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989) ("If a person has suffered no constitutional injury at the hands of [any] individual police office, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point.") (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Therefore, the District Court properly dismissed Whiting's claims against Smith Township and Burgettstown Borough.

For the reasons given, we will affirm the judgment of the District Court.

---

[3] Nor did the claims relate back to the date of her original complaint. See Fed. R. Civ. P. 15(c)(1). Nothing in the record indicates that the police chiefs received notice within 120 days of the filing of the original complaint, or that they had imputed notice of Whiting's law suit before December 21, 2009 (120 days after the complaint was filed). See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 194 (3d Cir. 2001) (explaining that notice may be imputed if the party to be added shares an attorney with the named party or the two share an identify of interest); see also Garvin v. City of Phila., 354 F.3d 215, 223 (3d Cir. 2003) (under the "shared attorney" method of imputing notice, "the applicable test is not whether the new defendants *will* be represented by the same attorney, but rather whether the new defendants *are* being represented by the same attorney").